UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAMPOIRE ORANGE,

    Plaintiff,

v.                                          Case No. 3:20-cv-842-BJD-PDB

PAYTON A. PRESCOTT et al.,

    Defendants.
_____

# ORDER

## I. Status

Plaintiff, Shampoire Orange, a federal inmate, is proceeding pro se on an amended complaint for the violation of civil rights under 42 U.S.C. § 1983 against eight Defendants arising out of conduct that occurred when he was detained at the Baker County Jail (Doc. 35; Am. Compl.). Before the Court is Defendant Chapman's motion to dismiss (Doc. 37; Motion).[1] Plaintiff opposes the motion (Doc. 46; Pl. Resp.), and, with leave of Court, Defendant Chapman filed a reply (Doc. 54; Reply).

---

[1] All other Defendants answered the amended complaint (Doc. 36) and have moved for summary judgment (Doc. 41). Plaintiff has responded to the motion (Doc. 55). However, the motion is not yet ripe because under the Local Rules, Defendants have fourteen days to file a reply. See M.D. Fla. R. 3.01(d).

## II. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." See Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

## III. Complaint Allegations

In his verified complaint and supporting exhibits (Doc. 35-1; Compl. Ex.), Plaintiff alleges officers and Defendant Nurse Chapman violated his Eighth Amendment right to be free from cruel and unusual punishment. See Am. Compl. at 5. As relevant to the motion before the Court, Plaintiff alleges Nurse Chapman failed to inform officers about his serious knee injuries, which prevented him from climbing stairs. See Compl. Ex. at 4-5. According to Plaintiff, on October 22, 2019, he told escorting officers that he was unable to

walk upstairs because he had a ruptured tendon in both knees. Id. at 2-3. The officers, however, selected an upstairs cell for him and began pushing him up the steps when he refused to walk up on his own. Id. Plaintiff allegedly pleaded with the officers to call the medical department to confirm he was given a bottom bunk/bottom tier pass. Id. After some time, officers sprayed Plaintiff with chemical agents for his non-compliance. Id. at 3. The officers then strapped him to a restraint chair, applied a spit shield, and brought him to the medical unit. Id. at 4.

In the medical unit, Nurse Chapman cleansed Plaintiff's eyes and recommended a shower. Id. at 4-5. Plaintiff asked Nurse Chapman to check his medical records and tell officers about his knee injury and his stair restriction. Id. at 5. Allegedly, Nurse Chapman agreed to "look it up for the officers." Id. Officers thereafter took Plaintiff back to the dorm and "dragged [him] up the stairs" to the shower and then to his cell. Id. The next morning, Plaintiff was moved to a bottom tier cell. Id. Allegedly, the officer who moved Plaintiff said he should not have been placed upstairs because of his injury. Id. Plaintiff contends Nurse Chapman was deliberately indifferent to his serious medical needs. See Am. Compl. at 5. He claims to have suffered mental and emotional

distress and physical injuries attributable to having been sprayed with chemical agents.² Id. at 7. He seeks compensatory and punitive damages. Id.

## IV. Analysis

Nurse Chapman seeks dismissal of the sole claim against her under Rule 12(b)(6), arguing Plaintiff fails to state a plausible claim for relief. See Motion at 2, 12. In response, Plaintiff says it was clearly documented in his medical records that he had ruptured tendons in both knees and was "unable to actively bend [his] knee[s] . . . [or] step up or over elevated objects." See Pl. Resp. at 2-3. Plaintiff asserts Nurse Chapman failed to "notify officers that [he could not] go upstairs." Id. at 3. With his response, Plaintiff offers documents from Baker County Jail and medical records from outside providers (Docs. 46-2 through 46-4).

### A. Consideration of Extrinsic Evidence

Generally, a court should not consider extrinsic evidence when ruling on a motion to dismiss unless a document "is central to the plaintiff's claim" and incorporated by reference in the complaint. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and

---

² Plaintiff asserts he was sprayed with chemical agents again five days after the first incident, but he does not fault Nurse Chapman for anything related to the second incident. See Compl. Ex. at 7.

4

attachments thereto."). In fact, Rule 12 provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." See Fed. R. Civ. P. 12(d). See also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.").

However, the Eleventh Circuit has held a court may consider extrinsic evidence when ruling on a 12(b)(6) motion if a document "is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). Thus, when a plaintiff, in his complaint, incorporates by reference a document that is central to his claim, and the opposing party does not contest the authenticity of the document, a court may consider it when ruling on a motion to dismiss. Id.

Here, Plaintiff references his medical chart in his amended complaint. See Am. Compl. at 7; Compl. Ex. at 5. And, in her reply, Nurse Chapman does not question the authenticity of the documents Plaintiff offers with his response. See generally Reply. Accordingly, the Court will consider them, to the extent relevant, in ruling on Nurse Chapman's motion to dismiss.

5

## B. Deliberate Indifference

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had a serious medical need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (identifying the elements of a deliberate indifference claim: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury").

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020). For instance, to sufficiently plead the second element, a plaintiff must do more than allege the care provided was "subpar or different from what the inmate want[ed]." Id. See also Goebert v. Lee Cnty., 510 F.3d 1312, 1327 (11th Cir. 2007). This is so because "a simple difference in medical opinion between

the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton v. Abston, 841 F.3d 1207, 1224 (11th Cir. 2016) (internal quotation marks omitted). Thus, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). See also Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) ("[T]he Supreme Court established that 'deliberate indifference' entails more than mere negligence.").

Stated another way, "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." Stone v. Hendry, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). To allege a defendant was deliberately indifferent to a plaintiff's serious medical needs, a plaintiff must assert facts showing the defendant (1) had "subjective knowledge of a risk of serious harm" and disregarded that risk by conduct that surpasses negligence. Goebert, 510 F.3d at 1327.

When a plaintiff has received some treatment, he pleads a deliberate indifference claim only by alleging facts showing the care he received was "so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058-59 (11th Cir. 1986)). See also Melton, 841 F.3d at 1223 ("[C]onduct deliberately indifferent to serious medical needs has included: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all.").

Significantly, Plaintiff alleges he was taken to the medical unit not because of his knee injuries but because he was sprayed with chemical agents. And Plaintiff readily acknowledges Nurse Chapman treated those injuries. She poured water in his eyes and recommended a shower—a recommendation officers followed. See Compl. Ex. at 4-5. Plaintiff does not allege Nurse Chapman's medical treatment was grossly inadequate or so cursory as to amount to no treatment at all. See id.

Moreover, it does not appear Nurse Chapman even knew of the severity of Plaintiff's knee injuries when she treated him for exposure to chemical agents. See id. at 5. According to Plaintiff, "Nurse Chapman was deliberately indifferent to Plaintiff's serious medical need by not looking into Plaintiff's medical records which show [he has] torn tendons in both knees." See Am. Compl. at 7 (emphasis added). Assuming Nurse Chapman did not consult

8

Plaintiff's medical chart when he asked her to, she cannot have had subjective knowledge of Plaintiff's serious knee injuries and attendant physical limitations.

Because Nurse Chapman provided medical care for Plaintiff's exposure to chemical agents, Plaintiff's claim is best characterized as one for deliberate indifference to a substantial risk of serious harm, as opposed to deliberate indifference to a serious medical need. Along these lines, Plaintiff's allegations are somewhat analogous to those of an inmate who alleges prison officials housed him in a known, dangerous environment. See, e.g., Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1103 (11th Cir. 2014) (holding the defendants' failure to take any "action to mitigate [] the substantial risk of serious harm" one inmate posed to another constituted deliberate indifference); See also Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 614, 616, 624 (11th Cir. 2007) (vacating judgment in favor of the defendants because the plaintiff asked for transfer and protection after gang members told him they wanted to kill him, but defendants allowed him to be returned to general population where he was promptly stabbed by a gang member).

Regardless of the precise characterization of Plaintiff's deliberate indifference claim against Nurse Chapman, the standard is the same: Plaintiff must allege facts permitting the reasonable inference Nurse Chapman actually

9

knew he faced a substantial risk of serious harm but disregarded that risk. Caldwell, 748 F.3d at 1099. If Nurse Chapman did not review Plaintiff's medical chart until after officers took him to his upper tier cell, she cannot have had subjective knowledge of a substantial risk of serious harm. Additionally, by his own allegations, Plaintiff concedes Nurse Chapman did not ignore him when he asked her to check his medical chart. See Compl. Ex. at 5. Plaintiff says Nurse Chapman told him she would "look it up for officers." Id.

In his response, Plaintiff explains events somewhat differently than he does in his complaint. He says the officers "called medical," and Nurse Chapman informed them he had a lower bunk pass. See Pl. Resp. at 3. But he says Nurse Chapman did not notify the officers he could not climb steps, which she would have known had she read his medical chart. Id. Plaintiff contends, "it would be hard for [Nurse Chapman] not to notice [he had] an orthopedic appointment [scheduled]" and an outside provider had documented his "serious medical injury." Id.

Plaintiff's speculative allegations do not suffice. Nurse Chapman cannot be faulted for "fail[ing] to alleviate a significant risk that [s]he should have perceived but did not." See Farmer v. Brennan, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but

did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."). If true that Nurse Chapman failed to read Plaintiff's medical chart carefully or failed to communicate to the escorting officers the precise details of his injury—i.e., that he had expressed difficulty walking up and down stairs and was awaiting a consult with an orthopedist—such a failure amounts to, at worst, "inadvertence or error in good faith," not deliberate indifference. See Stone, 785 F. App'x at 769.

Moreover, according to disciplinary records Plaintiff submitted with his complaint (Doc. 35-1; Compl. Ex.) and jail records he filed with his response to the motion to dismiss (Doc. 46-2; Resp. Ex.), Plaintiff did not have a lower tier medical pass on October 22, 2019. In response to Plaintiff's grievance about the October 22, 2019 incident, a prison official stated: "Medical was called and informed us that you had a lower bunk pass only. Not a lower tier." See Compl. Ex. at 10. The grievance responder told Plaintiff to submit a sick-call request if he wanted to consult with the doctor about obtaining a lower tier pass. Id. The grievance responder reiterated, "At this time, you still don't have a lower tier pass. Just a lower bunk." Id.

The grievance response aligns with information in Plaintiff's jail medical file, upon which he relies in opposition to the motion to dismiss. See Pl. Resp. at 2-3. On August 9 and 30, 2019, a jail official noted Plaintiff had "special

11

needs" and required "lower level/lower bunk" housing. See Resp. Ex. at 7, 8. However, on September 4, 2019, a medical official noted as follows: "Refer [patient] to orthopedic surgery for repair [of] left knee tendon[.] Continue <u>low bunk</u>." Id. at 9, 10, 15 (emphasis added). Moreover, the first page of Plaintiff's intake screening forms prominently displays the following housing restriction only: "Bottom Bunk." Id. at 2.

Had Nurse Chapman in fact reviewed Plaintiff's medical chart knowing officers planned to house him in an upper tier cell, she would have seen a doctor assigned Plaintiff a bottom bunk pass only, despite his knee injuries and mobility issues. Thus, Nurse Chapman cannot be said to have ignored a substantial risk of serious harm. Notably, Plaintiff does not allege Nurse Chapman was the provider who referred him to an orthopedist or who assigned the medical pass, nor does he allege she was the provider who evaluated his knee injuries. Regardless, to the extent Plaintiff believes he should have been assigned a lower tier pass, he alleges a mere disagreement "over the adequacy of [medical] treatment," which is not a constitutional claim. See Hamm, 774 F.2d at 1575.

For the above reasons, Nurse Chapman's motion to dismiss is due to be granted and Plaintiff's claim against her dismissed.

Accordingly, it is now

**ORDERED**:

1. Defendant Chapman's motion to dismiss (Doc. 37) is **granted**, and Plaintiff's deliberate indifference claim against Defendant Chapman is **dismissed**.

2. The **Clerk** shall terminate Defendant Chapman as a party to this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of August 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Shampoire Orange
Counsel of Record