UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAMPOIRE ORANGE,

        Plaintiff,

v.                              Case No. 3:20-cv-842-BJD-PDB

PAYTON A. PRESCOTT et al.,

        Defendants.
_____

## ORDER

### I. Status

Plaintiff, Shampoire Orange, an inmate of the Federal Bureau of Prisons (BOP), is proceeding pro se on an amended complaint for the violation of civil rights under 42 U.S.C. § 1983 against seven Defendants: Officers Prescott, Roberts, Kirkland, McKenzie, Reed, Warren, and Kendrick[1] (Doc. 35; Am. Compl.). Plaintiff offers a declaration in support of his amended complaint setting forth the facts in more detail (Doc. 35-1; Pl. Dec.). Before the Court is Defendants' motion for summary judgment (Doc. 41; Def. Motion) with exhibits (Docs. 40-1 through 40-11; Def. Ex. 1-11), which Plaintiff opposes (Doc. 55; Pl.

---

[1] The Court previously dismissed Plaintiff's claim against Nurse Chapman. See Order (Doc. 56).

Resp.) with a brief (Doc. 55-1; Pl. Brief), a "statement of undisputed material facts" (Doc. 55-2; Pl. Facts), and exhibits (Docs. 55-3 through 55-14; Pl. Ex. B-M).[2] Plaintiff alleges Defendants used excessive force against him on two dates in October 2019, when he was housed at the Baker County Jail ("the Jail").[3] Am. Compl. at 6-7; Pl. Dec. at 2-5. Defendants concede some force was used against Plaintiff, but they contend "all force was applied in a good-faith effort to maintain or restore discipline, and not . . . maliciously and sadistically to cause harm." Def. Motion at 2-3.

## II. Motion for Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient

---

[2] Plaintiff did not include an exhibit labeled "A."

[3] Even though Plaintiff was housed at the Jail at the time of the events, he was not a pretrial detainee. He was convicted and sentenced on March 26, 2019. See United States v. Orange, Case No. 5:17-cr-5-LGW-BWC (S.D. Ga. 2019).

to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. Id. Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." Haves v. City of Miami,

52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Use-of-Force Incidents

Plaintiff complains of two separate use-of-force incidents. The first occurred on October 22, 2019, and involved, to differing degrees, all Defendants ("first incident"). <u>See</u> Pl. Dec. at 2-3. The second occurred on October 27, 2019, and involved only Defendant Kirkland ("second incident"), though Defendant Reed was present. <u>Id.</u> at 7. Both force incidents were captured on video, which Defendants have submitted with their motion. <u>See</u> Def. Exs. 1-5.

**The First Incident**

The first incident occurred in dorm A7 when Plaintiff was being processed for a cell assignment. Officers cleared a cell on the second tier for him, so he could be housed alone. Def. Ex. 6 at 2. Plaintiff contends he "informed Officers he ha[d] a lower level/lower bunk pass [because he had] ruptured tendon[s] in both knees and [he was] unable to go up stairs without falling." Pl. Facts at 2; Pl. Dec. at 2. Plaintiff offers the declarations of three inmates, who aver they heard Plaintiff tell officers about his knee injuries and attendant physical limitations. Pl. Ex. H. In their incident reports, Defendants contend Plaintiff had been yelling obscenities before they arrived at dorm A7. Def. Ex. 6 at 2-4. None of the Defendants acknowledge Plaintiff having

4

reported knee injuries, but they note he claimed to have had a bottom tier medical pass. Id.

The parties do not dispute, and the video footage confirms, the following additional facts: Plaintiff was in handcuffs; officers directed Plaintiff to climb the stairs to a second-tier cell, but Plaintiff refused; Plaintiff rolled up his pants to show officers his knees; Defendants Prescott and Kirkland first attempted to gain Plaintiff's compliance through verbal commands and "custodial touch[es]"; Defendants Prescott and Kirkland tried forcing or assisting Plaintiff up the stairs; Defendant Prescott administered chemical agents, causing Plaintiff to fall to the floor; Defendant Roberts administered a second round of chemical agents when Plaintiff was on the floor; under Defendant Warren's supervision, Defendants Roberts, McKenzie, Kendrick, and Reed placed Plaintiff in a restraint chair; after Plaintiff was placed in the restraint chair, Defendant McKenzie placed a spit shield over Plaintiff's face because he was spitting. Def. Ex. 1; Def. Ex. 2; Def. Ex. 4; Def. Ex. 6 at 2-4; Pl. Dec. at 2-4; Pl. Facts at 2-3. The parties also agree that Plaintiff then was evaluated by medical personnel, given a shower and a new uniform, and then was returned to his assigned cell. Def. Ex. 6 at 2-4; Def. Ex. 11 ¶ 12; Pl. Dec. at 4-5; Pl. Facts at 4.

**The Second Incident**

On October 27, 2019, Defendant Kirkland administered chemical agents on Plaintiff inside his cell. Def. Ex. 7 at 1-2. Defendant Reed was present in the dorm when Defendant Kirkland sprayed Plaintiff, but he did not actively participate in the incident. As seen on the video footage, Defendant Reed was tending to other duties inside the dorm. Def. Ex. 5.

Both Defendant Kirkland and Defendant Reed completed incident reports. Def. Ex. 7. Defendant Kirkland said Plaintiff had been being disruptive since he and Defendant Reed began their shift. Id. at 1. According to Defendant Kirkland, Plaintiff was "yelling obscenities, making derogatory remarks . . . and using a clinched fist to bang on the cell door." Id. After two hours of Plaintiff's behavior, Defendant Kirkland "placed a black security curtain over the window of [his] cell." Id. Plaintiff still did not cease his "disruptive behavior." Id. After another ninety minutes, Defendant Kirkland "ordered [Plaintiff] a final time to cease his disruptive behavior, to no avail." At that time, Defendant Kirkland administered three one-second bursts of chemical agents. Id.

Plaintiff asserts Defendant Kirkland sprayed him "for over 5 minutes" because Plaintiff would not "stop talking." Pl. Facts at 4-5. In his grievance, Plaintiff implied Defendant Kirkland sprayed him because Defendant

Kirkland felt that Plaintiff had gotten "the best [] of him with [their] exchange of words." Pl. Dec. at 11. Plaintiff complained that Defendant Kirkland had no "reason to use force on [him]," and his conduct was "unprofessional." Id.

### IV. Motion & Analysis

Defendants argue they are entitled to judgment as a matter of law as to both incidents because their uses of force against Plaintiff did not violate the Eighth Amendment and because Plaintiff did not exhaust his administrative remedies for the second incident.[4]

Because exhaustion is a matter in abatement, the Court must treat the defense as if raised in a motion to dismiss. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). See also Maldonado v. Unnamed Defendant, 648 F. App'x 939, 951 (11th Cir. 2016) ("We treat an exhaustion defense raised in a motion for summary judgment as an unenumerated Rule 12(b) motion to dismiss.").

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) provides, "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of

---

[4] In their Answer (Doc. 36), Defendants raised an affirmative defense based on Plaintiff's failure to exhaust his administrative remedies.

available administrative remedies is "a precondition to an adjudication on the merits." Bryant, 530 F.3d at 1374. See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93. However, the PLRA mandates only that inmates exhaust those remedies "as are available." Ross v. Blake, 578 U.S. 632, 648 (2016) ("The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available'.").

The Baker County Sheriff's Office (BCSO) requires an inmate to file a grievance and, if "not satisfied with the decision," to file an "appeal to the Corrections Bureau Director or designee." Pl. Ex. M at 3-4. Defendants acknowledge Plaintiff filed a grievance related to the second incident. Plaintiff submitted a copy of this grievance with his complaint. Pl. Dec. at 11. The

8

grievance is dated October 28, 2019. Id. A supervisor investigated Plaintiff's allegations and, on October 31, 2019, found his "allegation of excessive force [to be] not justified." Id. at 11, 12. In accordance with BCSO policy, a Shift Commander had five days to review the supervisor's report and respond to the grievance. Pl. Ex. M at 4. The Shift Commander responded to Plaintiff's grievance on November 6, 2019. Pl. Dec. at 12. Plaintiff concedes he did not file an appeal. Pl. Brief at 12. However, he contends the BCSO's administrative remedies were unavailable to him because he was transferred to the custody of the BOP on November 6, 2019, the day the Shift Commander responded to his grievance. Id.

Given Plaintiff was no longer in the custody of the BCSO when the Shift Commander denied his grievance, the Court finds convincing Plaintiff's argument that his administrative remedies may have been unavailable to him. At the very least, there is a genuine issue of material fact with respect to whether Plaintiff still had access to the BCSO grievance process after his transfer. See Hill v. Chalanor, 128 F. App'x 187, 188-89 (2d Cir. 2005) (holding there was a question of fact whether the grievance procedure was available to an inmate who was transferred to a different facility, which frustrated his ability to appeal his grievance). See also Murphy v. Grochowski, No. 3:18-CV-01404, 2020 WL 806584, at *12-13 (M.D. Pa. Jan. 7, 2020), report and

9

recommendation adopted, 2020 WL 815773 (M.D. Pa. Feb. 18, 2020) (finding an inmate's transfer to a facility not affiliated with the facility where the incident arose inhibited his ability to pursue administrative remedies).

As such, Defendants' construed motion to dismiss—based on exhaustion—is due to be denied.

### B. Excessive Force

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when necessary "to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320 (1986). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991). Accordingly, courts must balance concerns of an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. Ort, 813 F.2d at 321-22.

An inmate against whom force is used to restore order demonstrates an Eighth Amendment violation "only if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" Williams, 943 F.2d at 1575

10

(emphasis is original). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to staff and inmates, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. See id.; Whitley, 475 U.S. at 321 ("Whitley factors"). See also Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002). In considering the Whitley factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990)). The Supreme Court has stressed,

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added). Nonetheless, if an officer reasonably uses force to quell a disturbance, the force should cease once the behavior giving rise to the need for force abates. Ort, 813 F.2d at 324.

The Eleventh Circuit has recognized chemical agents as an acceptable non-lethal use of force so long as valid penological reason supports such force. See Sconiers v. Lockhart, 946 F.3d 1256, 1264 (11th Cir. 2020); Thomas v. Bryant, 614 F.3d 1288, 1301-11 (11th Cir. 2010); Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010). See also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003) ("Given that pepper spray ordinarily causes only temporary discomfort, it may be reasonably employed against potentially violent suspects, especially those suspects who have already assaulted another person and remain armed.").

**The First Incident**

With respect to the first incident, the parties dispute what prompted the use-of-force. Plaintiff asserts he told Defendants he could not walk up the stairs because he had "torn tendon[s] in both knees," for which he had a "lower level/bottom bunk" pass. Pl. Dec. at 2; Pl. Ex. G at 2-3. While none of the Defendants reference Plaintiff's claimed knee injuries in their incident reports, Def. Ex. 6, Defendant Roberts avers he "called medical to check on [Plaintiff's]

assignment and was informed that [Plaintiff] did have a bottom bunk assignment, but did not have a bottom tier assignment." Def. Ex. 11 ¶ 8. A review of the video footage shows Defendant Roberts made a phone call from the duty station at about the 5:15 mark. Def. Ex. 1. Plaintiff offers no evidence disputing that Defendants did not know he had a bottom tier pass before ordering him to climb the stairs. And, in fact, as the Court noted in its Order on former Defendant Nurse Chapman's motion to dismiss, it appears Plaintiff did not have a bottom tier pass at the time force was used. See Order (Doc. 56) at 11. As such, Defendants cannot be faulted for ordering Plaintiff to climb the stairs.

Regardless of the reason Plaintiff disobeyed Defendants' orders to walk upstairs, the fact remains that Plaintiff disobeyed multiple orders. Thus, the first factor—the need for force—favors Defendants. See Danley, 540 F.3d at 1307 ("Pepper spray is an accepted non-lethal means of controlling unruly inmates."). Plaintiff merely disputes the reasonableness of the force used or suggests there were "arguably superior alternatives" to using force. As the Eleventh Circuit has emphasized, corrections officials "do not have the luxury

13

or obligation to convince every inmate that their orders are reasonable and well-thought out." Id.

Upon review of the evidence, including the video footage, the Court concludes the remaining factors weigh in Defendants' favor as well: Defendant Prescott used three one-second bursts of chemical agents; Defendant Roberts similarly administered a short burst of chemical agents when Plaintiff refused to comply with orders to remain on the floor (the video footage shows Plaintiff trying to sit or stand); the officers tried first to obtain Plaintiff's compliance using "custodial touch[es]" before resorting to the use of chemical agents and the restraint chair; even though Plaintiff did not appear physically violent, an unruly inmate potentially poses a threat of harm to staff, especially when other inmates are watching an incident unfold (as was the case here, see Def. Ex. 1; Pl. Ex. H); and Plaintiff sustained no lasting injuries but rather suffered the temporary effects of chemical agents. Def. Ex. 1; Def. Ex. 6 at 2-4.

Plaintiff appears to complain the use of the restraint chair and the spit shield were not necessary after he had been sprayed twice. See Pl. Brief at 6-7. However, the video shows Plaintiff was spitting when he was in the restraint chair, Def. Ex. 2; Def. Ex. 4, which demonstrates officers had a valid reason to

14

apply the spit shield.[5] And, even if the officers could have used a different tactic to subdue Plaintiff and gain his compliance, the use of the restraint chair after spraying him was not unconstitutional under the circumstances. See Williams, 943 F.2d at 1574 (holding officers did not violate the Eighth Amendment when they kept an unruly and potentially violent inmate in four-point restraints for twenty-eight and one-half hours with tape over his mouth). See also Scroggins v. Davis, 346 F. App'x 504, 507 (11th Cir. 2009) (affirming entry of summary judgment for officers who used chemical agents against a "high-risk, dangerous inmate" who had "disobeyed a direct order and got involved in a scuffle with the guards" and thereafter placed him in four-point restraints for over three hours).[6]

Here, Defendants did not keep Plaintiff in the restraint chair for long, nor did they deny him an opportunity to decontaminate. Indeed, once Plaintiff was restrained, the officers brought him directly to the medical unit where a nurse immediately rinsed his eyes and cleared him to be returned to his cell.

---

[5] Even if Defendant McKenzie placed the spit shield on improperly, there is no evidence to permit the inference he did so with malice or to cause Plaintiff to suffer.

[6] Plaintiff asserts Defendants violated BCSO policy in their use of the restraint chair. Pl. Brief at 7. See also Pl. Ex. L (BCSO policy, providing a restraint chair may be used for an inmate "who has demonstrated behavior that creates a substantial risk of physical harm to themselves [or] others"). Plaintiff offers no support for his conclusory assertion that Defendants were not permitted to use a restraint chair under BCSO policy. Regardless, violation of a jail policy is not a constitutional violation.

15

Def. Ex. 6 at 2-4; Def. Ex. 11 ¶ 12. See also Pl. Dec. at 4-5; Pl. Facts at 4. Additionally, when Plaintiff was returned to the dorm, officers permitted him to shower and gave him a new uniform. Id.

For these reasons, the Court finds Defendants involved in or present during the first incident did not use excessive force against Plaintiff.

**The Second Incident**

As for the second incident, Defendants offer evidence showing Plaintiff had been unruly and yelling for hours, and his conduct "caus[ed] several other inmates to become disruptive." Def. Ex. 7 at 1-2. Plaintiff concedes he was talking to other inmates through the vent in his cell and had "exchanged words" with Defendant Kirkland. See Pl. Dec. at 11; Pl. Ex. I at 2, 4. As such, Defendant Kirkland was justified in using some force to gain Plaintiff's compliance with orders. Defendant Kirkland reported in his incident report that he administered only three one-second bursts.[7] Def. Ex. 7 at 1. Additionally, Defendant Kirkland attempted to first gain Plaintiff's compliance by placing a "black security curtain over [his cell] window," and ordering Plaintiff more than once to "cease his disruptive behavior." Id. at 1. Shortly after Plaintiff was sprayed, he was taken to medical for an evaluation and "was

---

[7] While Plaintiff says Defendant Kirkland sprayed him for "over 5 minutes," Pl. Facts at 5, the video evidence flatly contradicts his assertion, Def. Ex. 5.

16

given a decontamination shower, and clean clothes." Id. at 2. Accordingly, the Court finds Defendant Kirkland's use of force against Plaintiff on October 27, 2019, was reasonable.

Accordingly, it is now

**ORDERED:**

1. Defendants' motion for summary judgment (Doc. 41) is **GRANTED**.

2. The **Clerk** is directed to enter judgment in favor of Defendants Prescott, Roberts, Kirkland, McKenzie, Reed, Warren, and Kendrick, terminate any motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of March 2022.

                                                   BRIAN J. DAVIS
                                       United States District Judge

Jax-6
c:
Shampoire Orange
Counsel of Record